UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
SUNOCO, INC. (R&M),

                           Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     11-CV-2319(JS)(GRB)

175-33 HORACE HARDING REALTY CORP.,

                           Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:        Michael C. Falk, Esq.
                      Reed Smith LLP
                      2500 One Liberty Place
                      1650 Market Street
                      Philadelphia, PA 19103

                      Othiamba Nkosi Lovelace, Esq.
                      Reed Smith LLP
                      599 Lexington Avenue
                      New York, NY 10022

For Defendant:        Kenneth L. Robinson, Esq.
                      Robinson & Associates, P.C.
                      35 Roosevelt Avenue
                      Syosset, NY 11791

SEYBERT, District Judge:

        Plaintiff Sunoco, Inc. (R&M) ("Plaintiff" or "Sunoco")

commenced this action on May 12, 2011 against Defendant 175-33

Horace Harding Realty Corp. ("Defendant" or "Horace Harding")

asserting claims for breach of contract, declaratory judgment,

and violation of the New York Navigation Law.  Defendant

answered and filed counterclaims for breach of contract,

indemnification, and violation of the New York Navigation Law.

Currently pending before the Court are: (1) Plaintiff's motion

for partial summary judgment on the liability portion of its breach of contract claim and on Defendant's counterclaims; and (2) Defendant's motion for summary judgment seeking that the Court dismiss all of Plaintiff's claims and grant Defendant summary judgment on its counterclaims. For the following reasons Plaintiff's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART and Defendant's motion is DENIED.

<u>BACKGROUND</u>[1]

On November 30, 1998, Plaintiff and Defendant entered into an "Agreement of Sale" pursuant to which Plaintiff agreed to sell, and Defendant agreed to buy, property at 175-33 Horace Harding Expressway in Flushing, New York (the "Property" or the "Site"). (Pl.'s 56.1 Stmt. ¶ 2; Def.'s 56.1 Stmt. ¶ 2.) Prior to the sale, both parties were aware that the Property was contaminated, and in fact the New York State Department of Environmental Conservation ("NYSDEC") had assigned Spill No. 99-9665 regarding a November 9, 1999 report of petroleum contamination at the Property. (Def.'s 56.1 Stmt. ¶¶ 3-4.) As such and pursuant to the Agreement of Sale, Plaintiff agreed to be responsible, at its cost and expense, for remediating to the

---

[1] The following facts are drawn from the parties' Local Rule 56.1 Statements ("56.1 Stmt.") and Counterstatements ("56.1 Counterstmt.") and the exhibits attached thereto and submitted therewith.

satisfaction of the NYSDEC, any environmental contamination at the Property that existed prior to the sale to Defendant. (See Pl.'s 56.1 Stmt. ¶ 5.)

The Agreement of Sale also provided that if there was a "New Release" of contaminates while Plaintiff was conducting environmental activity in accordance with the Agreement but after the Settlement Date,[2] Defendant would be responsible for the additional cost of remediation attributable to the New Release.  (Pl.'s 56.1 Stmt. ¶ 5.)  If there was a dispute regarding a New Release, the Agreement of Sale further provided that:

> BUYER and SELLER will mutually agree on an environmental consultant to make a determination as to the quantity of contamination resulting from the New Release and (i) whether there is a New Release, and if a New Release, (ii) the increase in the cost of remediation due to the New Release . . . . The method of selection of the environmental consultant will be as follows: Initial consideration will be given to the consultant hired by the SELLER to conduct to remediation [sic] or monitoring.  If BUYER and SELLER do not agree to use this consultant, SELLER will submit to BUYER a list of four consultants from which BUYER

---

[2] The Agreement of Sale defines the "Settlement Date" as on or before January 29, 1999.  (Lovelace Decl. in Support Ex. E, Agreement of Sale ¶ 3.)  The parties, however, refer to the Settlement Date as the date when Defendant took title, i.e., May 20, 1999.  (See Pl.'s Br. in Support, Docket Entry 31-2, at 2; Def.'s Br. in Support, Docket Entry 33-4, at 3.)  As there appears to be no dispute, the Court will presume that the May 20, 1999 date is the Settlement Date.

> will select one within ten days after
> receiving the list.

(Agreement of Sale ¶ 12(g).)

Defendant took title to the Property on May 20, 1999 and has operated a retail gas station on the Site since then. (Pl.'s 56.1 Stmt. ¶¶ 7, 12; Def.'s 56.1 Stmt. ¶¶ 1, 8.) In or about April 2002, Global Construction, a corporation that constructs gasoline and service stations, had been working on the Property making repairs. (Pl.'s 56.1 Stmt. ¶ 17.) As part of that work, Mr. Russell McCroy, a Global Construction employee at the time, began investigating a possible gas leak. (Pl.'s 56.1 Stmt. ¶¶ 16, 19.) Mr. McCroy first performed a helium test at the Site, but was unable to locate the leak. (Pl.'s 56.1 Stmt. ¶ 20.) As such, Global Construction excavated the lines, and according to Plaintiff, ultimately discovered a leak. (Pl.'s 56.1 Stmt. ¶ 21.)

On April 1, 2002, an unknown individual reported a "line test failure" at the Property to the NYSDEC. (Pl.'s 56.1 Stmt. ¶ 14; Def.'s 56.1 Stmt. ¶ 11.) The NYSDEC thus opened a spill number for the Property (the "2002 Spill Report"). (Pl.'s 56.1 Stmt. ¶ 13.) Defendant disputes that there was a release of contaminates and avers that the 2002 Spill Report does not indicate that any petroleum was discharged. (Def.'s 56.1 Stmt. ¶ 13.)

According to Plaintiff, Global Construction fixed the leak and, as was its usual practice, contacted another company-- Crompco--to test the underground storage tanks and the lines, piping, and equipment. (Pl.'s 56.1 Stmt. ¶¶ 23-26.) Crompco tested the Site, and the system passed all tests. (Pl.'s 56.1 Stmt. ¶ 26.)

On July 22, 2002, and on other occasions, Plaintiff notified Defendant that it believed that a New Release had occurred at the Site due to the aforementioned events and that action pursuant to Paragraph 12(g) of the Agreement of Sale was required. (Pl.'s 56.1 Stmt. ¶ 32.) Defendant disputed any New Release and did not agree to an environmental consultant hired by Plaintiff. (Pl.'s 56.1 Stmt. ¶¶ 33-34.)

According to Plaintiff, the parties then followed the terms of the Agreement of Sale and jointly selected EnviroTrac Ltd. ("EnviroTrac") "to conduct a forensic investigation and remediation cost allocation analysis with respect to the Site." (Pl.'s 56.1 Stmt. ¶ 36.) Defendant maintains that it agreed to the joint selection of an environmental consultant in an attempt to negotiate a settlement, but not necessarily pursuant to the Agreement of Sale. (Def.'s 56.1 Stmt. ¶ 28.) Furthermore, Defendant asserts that EnviroTrac was to determine only the quantity of contamination, if a New Release occurred, and the increased cost of remediation attributable to the New Release.

(Def.s' 56.1 Counterstmt. ¶ 14.)   EnviroTrac, says Defendant, was not to determine the percentages of liability.   (Def.'s 56.1 Counterstmt. ¶ 14.)

In March 2006, Joseph Byrnes, President of EnviroTrac, produced a report entitled "Environmental Forensic Evaluation and Remediation Cost Allocation" ("EnviroTrac Report").   (Pl.'s 56.1 Stmt. ¶ 41.)   EnviroTrac determined that multiple New Releases occurred after the Settlement Date, and it allocated responsibility for remediation of contamination at the Property with 5% responsibility to Plaintiff and 95% to Defendant. (Pl.'s 56.1 Stmt. ¶ 47.)   Plaintiff conducted remediation, but Defendant has refused to pay.   (Pl.'s 56.1 Stmt. ¶ 56.)

<u>DISCUSSION</u>

The Court will first discuss the applicable standard of review before addressing the merits of the parties' motions.

I.  <u>Legal Standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F<small>ED</small>. R. C<small>IV</small>. P. 56(a); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).   "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact,

the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir.

2001) (citing <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 244 (2d Cir. 2000)).    Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." <u>Heublein, Inc. v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993).   "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." <u>Morales</u>, 249 F.3d at 121 (citation omitted).

II.  <u>Plaintiff's Breach of Contract Claim</u>

Plaintiff's breach of contract claim, as alleged in the Complaint, asserts that Defendant breached the Agreement of Sale by "refusing to reimburse Sunoco for its increased costs of monitoring and remediation at the Site caused by the New Release."   (Compl. ¶ 25.)   Plaintiff now moves for summary judgment on its breach of contract claim, asserting that Defendant breached the Agreement of Sale by refusing to pay Plaintiff 95% of the remediation costs Plaintiff has incurred from 2002 to the present while remediating New Releases at the Site.   Defendant cross-moves for summary judgment in its favor on Plaintiff's breach of contract claim on the grounds that: (1) Plaintiff's breach of contract claim is untimely; (2) the contract of sale merged into the deed; (3) Plaintiff did not

adhere to the provisions of the Agreement of Sale; (4) the
EnviroTrac Report is inadmissible; and (5) the EnviroTrac Report
was a non-binding settlement attempt to resolve a dispute.  The
Court will first address Plaintiff's motion for summary judgment
on this issue before turning to Defendant's argument and motion.

A.   <u>Plaintiff's Motion for Summary Judgment on its
Breach of Contract Claim</u>

Generally, "a motion for summary judgment may be
granted in a contract dispute only when the contractual language
on which the moving party's case rests is found to be wholly
unambiguous and to convey a definite meaning."  <u>Topps Co. v.
Cadbury Stani S.A.I.C.</u>, 526 F.3d 63, 68 (2d Cir. 2008).
"Contract language is ambiguous if it is 'capable of more than
one meaning when viewed objectively by a reasonably intelligent
person who has examined the context of the entire integrated
agreement.'"  <u>Compagnie Financiere de CIC et de L'Union
Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 232
F.3d 153, 158 (2d Cir. 2000) (quoting <u>Sayers v. Rochester Tel.
Corp. Supplemental Mgmt. Pension Plan</u>, 7 F.3d 1091, 1094 (2d
Cir. 2000)).  Despite Defendant's numerous arguments, it never
actually disputes the lack of ambiguity in the Agreement of
Sale, and specifically in paragraph 12(g).

The parties anticipated the exact issue that arose
with regard to a New Release and specifically contracted that,

if any dispute should arise regarding whether a New Release did or did not occur, they would "mutually agree on an environmental consultant to make a determination as to the quantity of contamination resulting from the New Release and (i) whether there is a New Release, and if a New Release, (ii) the increase in the cost of remediation due to the New Release." (Agreement ¶ 12(g).)   The Agreement of Sale further provided that "BUYER will assume the additional cost, responsibility and liability of 'Post Base Line Data' contamination."   (Agreement ¶ 12(g).) Such language is not open to interpretation, nor does Defendant suggest any alternative reading of these provisions.

Furthermore, the parties' correspondence clearly indicates that there was no dispute as to the meaning of paragraph 12(g).   While Defendant has been consistent in its position that there was no New Release, it also seemed to readily grasp the meaning of the contractual language at issue. For example, Defendant's June 5, 2005 letter notes that, since Plaintiff was claiming that there was a New Release, the parties should undertake "the 'steps and protocol' that are to be followed with respect to determining whether a 'New Release' has occurred." (Robinson Decl. Ex. DD.)   It then goes on to explain that, as such, they should mutually agree upon a consultant. (Id.)

In addition, it is also not in dispute that the parties then agreed upon EnviroTrac, that EnviroTrac issued a report concluding that a New Release had occurred, and that Defendant has refused to pay any costs associated with the New Release (see Lovelace Decl. Ex. L, Def.'s Resp. to Pl.'s Third Request for Admissions, Ques. 5 (admitting that Defendant refused to pay and continues to refuse to pay for any costs incurred by Plaintiff after May 20, 1999 to remediate environmental contamination)).

However, as Defendant correctly asserts, EnviroTrac's allocation of costs was not necessarily contemplated by the Agreement of Sale. Rather, the Agreement of Sale provides that Defendant would be responsible for the "additional cost, responsibility and liability of 'Post Base Line Data' contamination." (Agreement ¶ 12(g).) The EnviroTrac Report provides two allocation of cost methods and notes that the allocation of cost analysis was done at the direction of Plaintiff's counsel. (EnviroTrac Report, Lovelace Decl. in Support, Ex. J.) Thus, whether one method of allocation was preferable over another, or whether either method equated to a determination of the additional cost of contamination due to the New Release, is an issue of damages. Accordingly, Plaintiff's partial motion for summary judgment on its breach of contract claim is GRANTED because Defendant has refused any payment, but

whether Defendant is required to pay 95% of remediation costs incurred by Plaintiff from January 2002 to date is an issue of damages that the Court will not decide at this juncture.[3]

B.   <u>Defendants Cross-Motion on Plaintiff's Breach of Contract Claim</u>

In making this determination, the Court has implicitly rejected each of Defendant's arguments.   A more detailed analysis of Defendant's arguments follows.

1.   <u>Timeliness</u>

Defendant moves for summary judgment on Plaintiff's breach of contract claim because it is time-barred by the applicable statute of limitations.   The Court disagrees.

Breach of contract actions under New York law are governed by a six-year statute of limitations.   <u>See</u> <u>Hahn Auto.</u> <u>Warehouse, Inc. v. Am. Zurich Ins. Co.</u>, 18 N.Y.3d 765, 770, 967 N.E.2d 1187, 944 N.Y.S.2d 742 (2012) (citing N.Y. C.P.L.R. 213). "As a general principle, the statute of limitations begins to run when a cause of action accrues, that is, when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court."   <u>Id.</u>

---

[3] As the Court has granted partial summary judgment in favor of Plaintiff on the issue of liability on its breach of contract claim, Defendant's motion for summary judgment seeking dismissal of Plaintiff's declaratory judgment claim is DENIED.   Defendant based its argument solely on the premise that Plaintiff's breach of contract claim necessarily fails, and therefore its declaratory judgment fails as well.   (Def.'s Br. in Support at 10.)

(internal quotation marks and citation omitted). Where the contract is contingent upon the occurrence of a particular event, the cause of action has not accrued until the condition is fulfilled. See id.

Here, paragraph 12(g) of the Agreement of Sale was contingent upon the parties jointly selecting an environmental consultant and the consultant determining that there was a New Release resulting in additional remediation costs. Accordingly, a cause of action for breach of contract did not accrue until EnviroTrac issued its report making the requisite findings and Defendant refused to pay. See U.S. Bank Nat'l Ass'n v. Dexis Real Estate Capital Mkts., --- F. Supp. 2d ----, 2013 WL 2468027, at *3 (S.D.N.Y. June 6, 2013) ("[T]he statute of limitations runs from the time when the party making the demand first becomes entitled to make the demand, and not from the time the actual demand is made." (internal quotation marks and citation omitted) (emphasis in original)); Zere v. Real Estate Servs., Inc. v. Parr Gen. Contracting Co., Inc., 102 A.D.3d 770, 771-72, 958 N.Y.S.2d 708 (2d Dep't 2013) (affirming lower court's determination that a breach of contract action was not time-barred because the cause of action did not accrue until the plaintiff possessed a legal right to demand payment).

Contrary to Defendant's assertion, the cause of action did not accrue on August 27, 2002 when Defendant denied the

existence of a New Release and asserted that Plaintiff was solely responsible. (Def.'s Br. in Support at 5.) Plaintiff's correspondence with Defendant indicating its belief that a New Release occurred only began the process contemplated in paragraph 12(g). It was not until EnviroTrac issued its report in March 2006 and Defendant refused to pay that the statute of limitations began to run. As Plaintiff commenced this action in May 2011, its breach of contract claim is timely, and Defendant's motion for summary judgment in this regard is DENIED.

    2.  <u>Merger</u>

Defendant further argues that there can be no breach of the Agreement of Sale because all of its provisions were extinguished when the Agreement of Sale merged into the Deed dated March 3, 1999. (Def.'s Br. in Support at 6-7.) Again, the Court disagrees.

Defendant is correct in the general proposition that a contract of sale for real estate merges into the deed. <u>See</u> <u>Cerand v. Burstein</u>, 72 A.D.3d 1262, 1264, 897 N.Y.S.2d 789 (3d Dep't 2010); <u>1455 Wash. Ave. Assocs. v. Rose & Kiernan, Inc.</u>, 260 A.D.2d 770, 771, 687 N.Y.S.2d 791 (3d Dep't 1999). "However, the general rule does not apply where there is a demonstrated intent that a provision shall survive transfer of

title." Cerand, 72 A.D.3d at 1264 (internal quotation marks and citation omitted).

Here, the clear language of paragraph 12(g) of the Agreement of Sale demonstrates that the parties intended that it survive the deed. In fact, the paragraph begins with the clause "[i]f, following the Settlement Date and while SELLER is conducting environmental activity . . . ." (Agreement ¶ 12(g)). Further, paragraph 12(g) is specifically designed to implement a process for determining whether a New Release occurred during the time period in which Plaintiff continued its remediation on the Property, but Defendant had possession. Moreover, if there was any doubt as to the intent of the parties, their correspondences following the alleged New Release clearly indicates that they intended that the Agreement of Sale would govern. Cerand, 72 A.D.3d at 1264-65 (finding that the defendant's conduct supported the plaintiff's claim that the provision in question survived transfer of title); see also Goldsmith v. Knapp, 223 A.D.2d 671, 673, 637 N.Y.S.3d 434 (2d Dep't 1996) ("Intention of the parties may be derived from the instruments alone or from the instruments and the surrounding circumstances." (citation omitted)).

Accordingly, Defendant's motion for summary judgment in this regard is also DENIED.

### 3.   Plaintiff Did Not Adhere to the Contract

Defendant also maintains that summary judgment in its favor on Plaintiff's breach of contract claim is appropriate because paragraph 12(g) is not an indemnification provision, and Plaintiff should have brought a declaratory action rather than incur the costs of remediation and seek indemnification later. (Def.'s Br. in Support at 7-8.)   The Court disagrees.

In New York, the elements of a breach of contract claim are a contract, the plaintiff's performance under the contract, the defendant's breach, and damages resulting from the breach.   See Elisa Dreier Reporting Corp. v. Global Naps Networks, Inc., 84 A.D.3d 122, 127, 921 N.Y.S.2d 329, 333 (2d Dep't 2011).   Defendant apparently contends that Plaintiff is unable to establish the second element of its claim--its performance under the contract.   Plaintiff counters that it undertook remediation at the behest of the NYSDEC. (Pl.'s Opp. Br., Docket Entry 36, at 9-10.)

Here, paragraph 12(g) required that Plaintiff, jointly with Defendant, agree upon an environmental consultant and comply with the delineated procedures regarding a New Release. (See Agreement ¶ 12(g).)   Defendant has not come forward with any evidence to suggest that Plaintiff failed to mutually agree upon a consultant or refused to adhere to the consultant's findings.   Furthermore, paragraph 12(g) specifically applies

during the period when Plaintiff was in the process of remediation.  (<u>See</u> Agreement ¶ 12(g) (stating that the provision applies "while SELLER is conducting environmental activity").) Thus, whether Plaintiff continued its remediation activities at the Property pursuant to a voluntary agreement with the NYSDEC, because the NYSDEC forced it to do so, or because it was contractually obligated to remediate any contamination prior to the sale under the Agreement, such activities were not an inherent failure to perform under the contract.  Accordingly, Defendant's motion for summary judgment on Plaintiff's breach of contract claim on the basis that Plaintiff did not adhere to the contract is DENIED.

4.  <u>Admissibility of the EnviroTrac Report</u>

Defendant further argues that: (1) the EnviroTrac Report is inadmissible because Plaintiff did not properly disclose its author, J. Patrick Byrnes, as an expert witness under Federal Rule of Civil Procedure 26(a)(2), and (2) the EnviroTrac Report is not based upon personal knowledge as required by Federal Rule of Evidence 602, and, even if admissible, it should be deemed non-binding.  The Court does not find that these arguments merit summary judgment in Defendant's favor.

<u>First</u>, Plaintiff is not introducing the EnviroTrac Report as an expert report, nor does it seek to introduce Mr.

17

Byrnes as an expert.  (See Pl.'s Opp. Br. at 16 (Plaintiff's argument that the EnviroTrac Report is factual in nature).) Rather, the EnviroTrac Report is relevant insofar as it demonstrates that the parties indeed agreed upon EnviroTrac and that EnviroTrac issued a report finding that there had been New Releases that would require additional remediation costs.  (See Pl.'s Opp. Br. at 19 ("Despite Horace Harding's inaccurate articulation, the EnviroTrac Report is not being used to prove the existence of a New Release for purposes of Sunoco's breach of contract claim because it is not necessary to prove that under the Agreement of Sale.").

Second, Defendant's arguments that EnviroTrac's findings are non-binding are unavailing.  The contractual language is clear that Defendant "will assume the additional cost[s]" associated with any New Release.  (Agreement ¶ 12(g).) In addition, Plaintiff correctly asserts that "[u]nder . . . New York law, when parties agree to have a dispute settled by a neutral third party, the decision of the third party is binding and enforceable absent a showing of bad faith, fraud, or the failure to exercise honest judgment."  (Pl.'s Opp. Br. at 16 (citing Joseph v. Davis, Inc. v. Merritt-Chapman & Scott Corp., 27 A.D.2d 114, 117-18, 276 N.Y.S.2d 479 (4th Dep't 1967))).  See also Arena Constr. Co. v. Town of Harrison, 71 A.D.2d 647, 648, 419 N.Y.S.2d 3 (2d Dep't 1979).   Contrary to Defendant's

assertion, this concept is not necessarily exclusive to the construction context, see Int'l Bus. Machs. Corp. v. Burlington Air Express, Inc., No. 98-CV-2503, 2000 WL 890196, at *4 (S.D.N.Y. July 5, 2000), and the Court sees no reason as to why EnviroTrac's determination is not binding upon the parties in this case.  Moreover, Defendant's attacks on the potential reliability of the EnviroTrac Report are just that--attacks on its reliability, not a showing of bad faith, fraud, or a failure to exercise honest judgment on EnviroTrac's part.  Accordingly, Defendant's motion in this regard is DENIED.

     5.   The EnviroTrac Report as a Product of Settlement

     Defendant has come forward with absolutely no evidence to support its assertion that the EnviroTrac Report was a product of settlement discussions.  In response to Plaintiff's numerous letters identifying the Agreement of Sale and paragraph 12(g), Defendant repeatedly and continuously asserted its intention to comply with the Agreement and never disavowed the Agreement of Sale except insofar as to dispute whether a New Release had occurred.  (See, e.g., Robinson Decl. Ex. R (Aug. 27, 2002 Ltr. from Def. to Pl. stating "[i]f, in fact, there has been a new spill, we will take the appropriate action."); id. Ex. Z (June 15, 2004 Ltr. from Def. to Pl. stating: "Our client has never refused to comply with the terms of the Agreement of Sale dated November 30, 1998."); id. Ex. DD (June 3, 2005 Ltr.

19

from Def. to Pl. acknowledging that Plaintiff had demanded that Defendant comply with paragraph 12(g) of the Agreement of Sale and agreeing to follow the provisions thereof).)   Accordingly, Defendant's cross-motion for summary judgment in this regard is also DENIED.

III.   Defendant's Breach of Contract Claim

In addition, Plaintiff and Defendant move for summary judgment on Defendant's counterclaim for breach of contract. Defendant has alleged that Plaintiff breached paragraph 12(d) of the Agreement of Sale "by failing to fully remediate the Premises as required by the Agreement."   (Answer ¶ 43.)   In its opposition brief, Defendant argues that Plaintiff has failed to remediate the Property in a timely manner.   (Def.'s Opp. Br., Docket Entry 35-2, at 7.)

However, Defendant presumes to insert contractual language that is not present in the Agreement of Sale.   Nowhere does the Agreement of Sale require that Plaintiff remediate in a timely fashion, and as noted with respect to Plaintiff's breach of contract claim, the Agreement of Sale and the parties' conduct clearly demonstrates that they understood and intended that remediation would take place over the course of time.

Accordingly, Plaintiff's motion for summary judgment on Defendant's breach of contract claim is GRANTED.[4]

IV.  Navigation Law Claims

Both parties have also asserted claims under the New York Navigation Law, which generally prohibits the discharge of petroleum.  N.Y. NAV. LAW § 173 et seq.  Plaintiff has alleged that Defendant is liable under Section 176 of the New York Navigation Law because Defendant is responsible for the New Release and has failed to undertake any action to contain such discharge.  (Compl. ¶ 33.)  Defendant has also asserted a counterclaim under the New York Navigation Law, alleging that "[a]s a result of Plaintiff's unlawful discharge of petroleum at the Premises, [Defendant] has been damaged in an amount of no less than One Hundred Thousand ($100,000.00) Dollars."  (Answer ¶ 52.)  Although Plaintiff has not moved for summary judgment on its Navigation Law claim, Defendant has sought summary judgment in its favor on that claim.  Further, Plaintiff seeks summary judgment on Defendant's Navigation Law counterclaim.  For the following reasons, both parties' summary judgment motions on the Navigation Law claims are DENIED.

Section 176 of the New York Navigation Law provides that "[a]ny person discharging petroleum in the manner

_____

[4] Additionally, Defendant has not come forward with any evidence of damages, also meriting summary judgment in favor of Plaintiff.

prohibited by section one hundred seventy-three of this article shall immediately undertake to contain such discharge." N.Y. Nav. Law § 176(1). In addition, under Section 181 of the statute, "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages . . . ." N.Y. Nav. Law § 181(1). In very general terms, liability depends upon whether one is considered to be a "discharger." See Emerson Enters., LLC v. Kenneth Crosby N.Y., LLC, 781 F. Supp. 2d 166, 178-79 (W.D.N.Y. 2011); FCA Assocs. v. Texaco, Inc., No. 03-CV-6083, 2008 WL 314511, at *5 (W.D.N.Y. Feb. 4, 2008). "New York Courts have held that a discharger 'includes a party who is in a position to halt a discharge, to effect an immediate cleanup or to prevent the discharge in the first place." Emerson Enters., LLC, 781 F. Supp. 2d at 179 (internal quotation marks and citation omitted).

Here, in order to determine whether either party was a "discharger," it must first be decided whether there indeed was a discharge at the Property after 1999. Although the EnviroTrac Report concluded that there was at least one New Release, as the Court discussed earlier, Plaintiff is not introducing the EnviroTrac Report for the fact that a New Release occurred. See supra p. 17.

22

Moreover, both sides have produced evidence regarding the existence or non-existence of a New Release sufficient to create a question of fact in this regard. For example, Mr. Russel McCroy, who was present on the Property on April 1, 2002, affirmed that Global Construction excavated underground lines at the Site revealing a leak. (Lovelace Decl. in Support Ex. G, McCroy Aff. ¶ 11.) After receiving a call regarding a "line test failure," the NYSDEC opened a spill report. (Lovelace Decl. in Support Ex. F, 2002 Spill Report.) Plaintiff's evidence further shows that Global Construction thereafter fixed the leak (McCroy Aff. ¶ 13 (affirming that Global Construction fixed a leak)), and then enlisted the services of Crompco to re-test the lines and equipment (Lovelace Decl. in Support Ex. H, Kublinsky Aff. & accompanying exhibits; Lovelace Dec. in Support Ex. I, Crompco's 5/17/02 Daily Station Log.).[5]

In contrast, Defendant has presented evidence that a "line test failure" does not necessarily indicate a discharge of petroleum and may simply be the result of insufficient pressure in the gasoline dispensing lines. (Cioffi Decl., Docket Entry 33-3, ¶¶ 17-18.) In addition, Defendant accurately notes that the 2002 Spill Report states "0 G" under the category of amount of gasoline spilled. (2002 Spill Report.) Moreover, Mr. McCroy

_____

[5] Plaintiff also asserts that there is evidence of a New Release in 2004, citing to the EnviroTrac Report for support. (Pl.'s Opp. Br. at 21.)

indicated that any leak was "very small" and required no excavation of soil. (Robinson Decl. Ex. MM, McCroy Dep. at 23-24.)

As the Court finds that there are questions of fact regarding whether a New Release in fact occurred and the circumstances surrounding any potential New Release, Defendant's motion for summary judgment on Plaintiff's Navigation Law claim is DENIED.

With respect to Plaintiff's motion for summary judgment on Defendant's Navigation Law claim, Plaintiff asserts that Defendant's claim is moot because Defendant has not incurred any remediation costs or damages as a result of any remediation conducted at the Property. (Pl.'s Br. in Support at 14.) Courts, however, have held that even where a property owner has not incurred any costs of investigation or remediation, it may recover damages for either temporary or permanent injury to real property, or both.[6] See Hanna v. Motiva Enters., LLC, 839 F. Supp. 2d 654, 679 (S.D.N.Y. 2012); Kara Holding Corp. v. Getty Petroleum Mktg., Inc., No. 99-CV-0275, 2004 WL 1811427, at *14-16 (S.D.N.Y. Aug. 12, 2004). Neither

---

[6] The Court raises this issue without any determination regarding its potential viability. See 82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R&M), --- F. Supp. 2d ----, 2013 WL 3198395, at *6-7 (E.D.N.Y. June 25, 2013) (finding that Navigation Law claim based upon injury to property was time-barred by three-year statute of limitations).

party has addressed this particular issue, but in any event the lack of investigation and/or remediation costs does not necessarily bar a Navigation Law claim.

Furthermore, Defendant opposes Plaintiff's motion for summary judgment on Defendant's Navigation Law counterclaim because Defendant believes that it has incurred costs including attorneys' fees and expert expenses. (Def.'s Opp. Br. at 8.) Plaintiff responds that Defendant must show that its costs were pre-approved by the NYSDEC in order to recover. (Pl.'s Reply Br., Docket Entry 41, at 7-8.) However, "[t]here is no requirement that to bring an action pursuant to Navigation Law § 181 (5), or to recover an attorney's fee thereunder, a plaintiff must have either paid cleanup and removal costs or been held liable to the State for cleanup and removal costs." Starnella v. Heat, 14 A.D.3d 694, 694-95, 789 N.Y.S.2d 227 (2d Dep't 2005); accord Hanna, 839 F. Supp. 2d at 680. Accordingly, Plaintiff's motion for summary judgment on Defendant's Navigation Law claim is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART and Defendant's motion for summary judgment is DENIED. Plaintiff's motion is GRANTED as to liability on its breach of contract claim, though the Court makes no determination

regarding whether a 95% cost allocation is an appropriate measure of damages.   Plaintiff's motion is also GRANTED as to Defendant's counterclaim for breach of contract, but is DENIED as to Defendant's counterclaim under the New York Navigation Law.   Defendant's motion is DENIED in its entirety.

The action is hereby REFERRED to Magistrate Judge Gary R. Brown to resolve any remaining pretrial issues and to determine whether this action is ready for trial.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 4, 2013
          Central Islip, NY

26